The Federal Credit Union Act, Section 1786, does not strip federal district court subject matter jurisdiction to decide structural claims. It does not do so explicitly. It does not do so implicitly, either. The court should so hold to avoid rendering the stripping statute unconstitutional as applied to structural claims. $5 million and a lifetime in the Supreme  Is there language within the statute that gives, that lends itself to your distinction between structural and non-structural arguments? So, there is a difference between structural arguments and non-structural arguments. What language in the statute? Well, that's the point. There is no language in the statute that is clear enough and clear statement is what the Supreme Court requires a statute to have for that statute to be read as stripping the jurisdiction of the district courts to decide those structural claims or unconstitutional claims on a broader scale. So, the case on point is Shalala because that's the explicit stripping case. In Shalala v. Illinois Council on Long-Term Care, the U.S. Supreme Court said that that clear statement is exactly what is needed. So, the court was looking at the Social Security Act in that case, Section 405 of the Social Security Act, specifically and clearly references the arising under statute, the 28 U.S.C. 1331 provision. And Shalala says, yes, that is express stripping because the Social Security Act says you cannot bring a 1331 claim. That is the kind of express and clear stripping language that is lacking from Section 1786, Kilo 1. So, that should be the end of the analysis on the explicit stripping. But if the court is interested in looking at the implicit stripping analysis, I should preface the implicit stripping analysis by saying that the district court did not have to reach the implicit stripping analysis because according to the district court here, in the Mote's case, the statute does explicitly strip district court jurisdiction. But the implicit stripping analysis, I think, is crucial to understanding the nature of the structural claims and why they differ from the non-structural claims. And the case on point on implicit stripping is the U.S. Supreme Court's case, Axon v. Federal Trade Commission. In Axon, the court says structural claims are different because they become irremediable if you wait after the fact to then channel those claims directly to the circuit court and to not present them in a 1331 action to the district court. So, the structural claim at issue in Axon was this ALJ removal claim. The claim was subjection or the injury was subjection to this illegitimate proceeding led by an illegitimate decision maker. Axon, Justice Kagan, writing for a unanimous court, said that is precisely the kind of structural claim that must be remedied before the violation occurs. In fact, that violation will remain a violation even if you win in that administrative proceeding. And if you win the administrative proceeding, you aren't an aggrieved party, so the channeling statute would prevent you from even filing an appeal and bringing that structural claim to the circuit court. So, Axon really frames the issue as to why the nature of the claim matters. And that analysis goes to both the meaningfulness of judicial review, that's the first Thunder Basin factor under Axon. It also goes to the collateralism factor, the second Thunder Basin factor. The collateralism factor basically looks at the claims that the agency has alleged against the administrative enforcement target and sees if the claims that are presented to the district court in the 1331 action are wholly collateral to those agency-initiated claims against the enforcement target. That is the situation here. The claims we are presenting in the district court are basically three claims, that the ALJs are unconstitutionally insulated from the President's power to remove. The second claim, structural claim that we are presenting in the district court, is that Article III and the Seventh Amendment require an Article III forum and juries to decide these claims that the agency has brought against Mr. Motes. And you point out where in the statute you see the carve-out for structural claims. I'm happy to read through the statute because I think the text of the statute is crucial. And I'll preface that by saying the third claim that we have presented to the district court is a non-delegation claim because the first sentence of 1786-1 talks about that discretion and I'm going to quote, the Board may in its discretion apply to the United States District Court for the enforcement of any effective and outstanding notice or order. That first sentence gives the National Credit Union Administration discretion to file suit in district court or bring that suit in-house in the administrative proceeding. Then the second sentence, which is at issue here, the stripping provision says, however, which links the second sentence to the first sentence, however, no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order. That last part is crucial for the analysis here because there is no order at issue. There is simply no order here. There is a notice of charges that was filed or served by the National Credit Union Administration, but we aren't challenging or we aren't asking any relief from the district court that would affect the enforcement or issuance of the notice. The National Credit Union Administration must sue Mr. Motz. They must do so in federal district court where he would demand a jury trial because the claims that the NCOA has brought against him are $5 million and a lifetime industry bar. These are not trivial penalties. Only jury verdicts and Article III judgments can impose such punishments before a person can be deprived of liberty or property. That's all we are saying. The second sentence, by the nature of the fact that it's linking that first sentence grant of discretion to NCOA to the fact that you cannot ask a federal district court to affect the issuance of that notice tells you that. There is no clear statement, again, in the second sentence of 1786-1 that would aid the court in reaching the conclusion that it strips federal district court jurisdiction. Now, I do want to mention Bank of Louisiana because I believe that's the elephant in the room. You have heard arguments in the previous cases on Bank of Louisiana. I want to make four points about Bank of Louisiana. First, the claims in Bank of Louisiana were not structurally claims. There were two claims in Bank of Louisiana, an equal protection targeted prosecution claim. The second claim was a due process claim about the evidentiary subterfuge that occurred in the administrative proceeding. How do we know those are not structural claims? Well, you have to wait for that violation to occur, that evidentiary problem to occur in the administrative proceeding before you can make that claim in front of a circuit court. You have to channel that claim through the administrative proceeding before you can bring that claim to the circuit court. That is not the situation with structural claims. Again, going to Axon, Axon makes it pretty clear that structural claims are very different in nature, that violation occurs, that subjection to an illegitimate proceeding led by an illegitimate decision maker occurs the moment the agency hails you into its in-house tribunal. That is a very different kind of a claim than these, you know, this or that ruling that the administrative decision maker could issue. Axon's words, this or that ruling. We are not challenging this or that ruling that the administrative decision maker could issue here. We are saying that administrative decision maker is illegitimate because that administrative law judge is insulated from the president's power of removal by multiple layers of removal protection. We are saying that that proceeding is illegitimate because Article III courts and juries are necessary and the NCUA must prove its case against Mr. Motz in front of that independent and neutral Article III judge with a jury where appropriate before it can deprive Mr. Motz of liberty or property. We are saying that the illegitimate proceeding by the illegitimate decision maker cannot occur to begin with because this delegation of unfettered, unreviewable discretion to NCUA to basically commit, be the judge, jury, and prosecutor against Mr. Motz is unconstitutional. It does not respect the checks and balances that the Constitution has established. It violates Mr. Motz's rights for that reason. So the structural nature of the claims matter regardless of whether you analyze this under the clear statement rule of Shalala or if you analyze this under the implicit stripping three-thunder basin factor test. The last point I want to make is about claim channeling. Now, my friend on the other side says that these claims must be channeled, these structural claims must be channeled through the administrative proceeding, and then you wait for a final appealable decision from the National Credit Union Administration and then maybe eventually bring it to the appropriate circuit court. That argument fails for three reasons. The first reason is that the agency is powerless to declare itself unconstitutional. That is not a power that any federal agency has, and the Supreme Court has been clear about this. The second reason is that the injury here is very different than the injury that can arise out of this or that ruling that the administrative decision-maker could issue in this case. The third reason is that in the last few weeks, the Fifth Circuit decided the case AT&T versus Federal Communications Commission, which you heard from the previous arguments. In that case, the parties presented the structural claims, the Seventh Amendment Article III claim, to the Fifth Circuit, to this court, for resolution. This court agreed with the petitioners, the aggrieved party, and concluded that, yes, there was a violation of Article III and Seventh Amendment. It required a jury trial before AT&T could be deprived of liberty and property, so any imposition of civil penalties must occur with a jury trial in Article III courts. What's relevant here from AT&T is the remedy there was vacator. This court said, because administrative agencies do not have the power to impanel and preside over juries, only Article III courts do, the only remedy available for a claim of that nature that is brought after the fact is vacator of the final agency decision. Here, the claim is brought before the fact. The only thing that has occurred in the administrative proceeding is the issuance of the notice of charges, and then the other significant thing that has happened is an agreed-to motion, so it's an agreement of the parties to stay the administrative proceedings in deference to the Federal District Court's exercise of jurisdiction over Mr. Motz's federal complaint, and then the administrative law judge issued an order agreeing with the parties to stay the case. That's the only thing that has happened so far in the administrative proceeding. The structural claims are brought before the fact. As Axon indicates, that's how you should do it, because otherwise the claims become irremediable if you channel them through administrative adjudication and then eventually appeal to the circuit court. Your Honors, unless there are no questions, I do not have to use all of my time, but we ask that you reverse the district court's decision and remand so that the district court can reach the merits of the structural claims in the first instance. I want to ask you one more time. Where in the statute do you see a carve-out for structural claims? There is no carve-out in the statute for any claims other than affecting the enforcement or issuance of the notice and order. My point is that structural claims do not affect the issuance or enforcement of notice or order. After the Supreme Court's decision in Loperbright, we know that we have to exhaust all canons of construction before we read any ambiguity in the statute. To the extent that that language is ambiguous, the ambiguity has to be resolved in Mr. Motz's favor, because otherwise it would render the statutory scheme unconstitutional as applied to structural claims. That line of reasoning comes from multiple U.S. Supreme Court cases. Congress cannot authorize a violation of the Constitution just by passing a stripping provision like the one at issue here. Congress can only paint within constitutional bounds, and the constitutional bounds are explained quite well in Justice Joseph Story's exegesis in Martin v. Hunter Slicy. In Martin, Justice Joseph Story sort of had a thought experiment. He said, imagine a world where Congress does not establish any lower federal courts. What happens then? Well, the claims get channeled through the state court system and eventually reach the Supreme Court. But that is not the world we live in. We live in a world where we have district courts that have been given subject matter jurisdiction, original jurisdiction that is vested by Article III in the judicial branch. All of it, all civil cases arising under the Constitution can be brought in front of the federal district court. That's 28 U.S.C. 1331. So in order for 1786-1 to strip the district court 1331 jurisdiction, it has to include a clear statement like the one that is included in the Social Security Act, Section 405. Because that clear statement is lacking here, you either have to evaluate this under the Shalala Clear Statement Rule or evaluate this under Axon. What you cannot do is, or I mean I guess the court can do whatever comes to its mind, but if it concludes that 1786-1 strips federal district court jurisdiction, I don't see how you avoid rendering this stripping statute unconstitutional based on Martin v. Hunter Slicy and a long line of cases that come after that. Thank you, Your Honors. I'll come back for rebuttal. Daniel Aguilar. May it please the Court, Daniel Aguilar for the National Credit Union Administration. I want to start with the text because I think that's what makes this the easy case. 1786-k-1, which is identical in all respects to 1889, which we've been discussing earlier, says except as otherwise provided in this section, which talks about the other methods of seeking jurisdiction and judicial review, no court shall have jurisdiction to effect by injunction or otherwise the issuance and enforcement of any notice or order under this section. That is sweeping, broad, categorical language, and that's why the Supreme Court, in its decision in Federal Reserve Court v. M Court, said that this is plain and it's preclusive. It means that no court shall have jurisdiction to enjoin those proceedings. Now, I heard my friend say that, well, we're not seeking to enjoin a notice or order here, and so therefore, the text doesn't apply. That's incorrect. That's not how this court or the Supreme Court has read that language. So, in M Court, the only thing that the Federal Reserve Board had done was issue a notice of charges in hearing, saying we think that a statute's been violated here, we're going to start an enforcement proceeding. M Court sought to enjoin that, saying the agency itself had violated statutory provisions, and the Supreme Court said you cannot seek that kind of relief. The injunction bar in 1889, materially identical to the NCUA statute here, divests the court of jurisdiction over that suit seeking an injunction. So similarly, in Federal Reserve Board v. DLG Financial, the decision of this court implementing M Court, this court said there hasn't even been an enforcement proceeding yet, but what you're seeking to do is to stop and enjoin the agency under 1889 from even investigating or starting an enforcement action to begin with. So the relief you're seeking is barred by the statute. Congress doesn't need to specifically specify federal question jurisdiction under 1331 or civil rights jurisdiction under 1343, as plaintiffs assert here. Congress can certainly do that, but the language it chose here was even more sweeping than that. No court shall have jurisdiction. So that would necessarily include, too, the courts of appeals. Somebody could presumably try to seek this court's mandamus jurisdiction, saying I want a writ of prohibition under 28 U.S.C. 1651 to stop the agency. If Congress had only spoken under Section 1333 or 1331, it wouldn't apply, but Congress sought to be very clear here about what it wanted to do. So unlike an implicit scheme, right, where the district courts usually have jurisdiction under 1331 in the question as well, Congress didn't explicitly divest that jurisdiction. Did it do so implicitly? Do we engage in a multi-factor analysis to sort of read the tea leaves of discerning what Congress wanted and what claims get channeled and which ones don't? Here that decision is made for us. As Justice Gorsuch said in his acts on concurrence, Congress spoke simply in 1889 and said no courts shall have jurisdiction for this kind of an injunction. So instead of presuming district court jurisdiction and then only trying to figure out whether or not the claims get channeled implicitly, here Congress made the decision. The only way they get out of the text is by relying on Webster versus Doe to say, well, there's a heightened standard for constitutional claims. But at least the argument of, as I've understood it today, both in Burgess and here, is that it's not for all constitutional claims. It's only for structural constitutional claims. But that's not what Webster talks about. Webster talks about constitutional claims. The claim in Webster was one for equal protection. In other cases where this Court has talked about Webster, for example, Bank of Cushata, it's been about the agency proceeding specifically violates my due process rights. I need a pre-deprivation hearing before you can do something with my assets. So you could similarly allege, well, you didn't let me question this witness on this, or I think that the particular adjudicator is biased against me. That's his claim sounds in due process. Or I think the agency has gone after me as a class of one. That's an equal protection claim. And I think under their theory, if Webster versus Doe really did apply, you could always get district court jurisdiction to enjoin the proceedings based on those, what you might consider garden variety constitutional claims. But that's not what Congress wanted here. Congress wanted to say, you can get judicial review. It just is going to be later. This brief submitted in this case argues that precluding jurisdiction at this stage would effectively mean that no court can ever vindicate mode seven amendment rights. What is your response to that? I think that's incorrect. What Congress did in 1786J is say, if what you say is that the proceeding against you is unconstitutional, we're not going to let you enjoin it, but you can preserve your claim. And if your claim is meritorious, the agency action against you will have no effect, right? This court has authority to vacate, reverse any order of the board that is constitutionally erroneous. And it's not just based on a seventh amendment claim that would apply to any claim that sounds in the constitution or in statute or regulation, whatever the claim may be. This court obviously has said authority and this court has vindicated seventh amendment in article three claims when it's found those to be meritorious in other instances, for example, in Jharkhand itself, it said, this is a situation where you preserved your constitutional claim during the enforcement proceeding. You brought it to this court on appeal and we agree with you in substance. And that is the basis for vacating the agency order against you. If I understand the opposite argument, it is that that review would not be meaningful because it is a here and now injury and not one that should be preserved to a later time. And so I think that that matters for the implicit analysis, right? Where Congress hasn't spoken clearly, it's this court's duty to figure out what did Congress mean? Which claims did it mean to get channeled to the courts of appeals and which ones can still be brought in district court? Because in the SEC scheme, right, there wasn't a comparable statute like this. There wasn't any statute that says the courts lack jurisdiction. It just says the court of appeals has jurisdiction after the order. And so therefore the court was saying, well, these structural claims, right, that we can look at and discern as sort of a policy judgment ought to be brought in district court, whereas the mill constitutional claims can be brought in the court of appeals. But that's not the Webster analysis, right? What the Supreme Court made clear in Elgin versus Department of Treasury, where it was discussing Webster, is where you have a judicial forum where you can raise your claims, that means Webster doesn't apply. So in Elgin, it was federal employees who had been fired because they didn't register for the draft. They brought suit in district court saying, we want a declaration that the draft is unconstitutional because only males have to register, not women, and that is an equal protection violation. They wanted a declaration that the statute is unconstitutional, they wanted an injunction, and they wanted their jobs back. But what the Supreme Court said is, you can bring that constitutional claim within the federal administrative agencies and you can get review in the court of appeals. Therefore, regardless of the implicit channeling analysis, how does Slender Basin work, before the court got to that, what the court said, that means Webster does not apply. So here, too, they can seek judicial review under 1786J. They can bring their constitutional claim in a court. Congress has not tried to bar any judicial forum. That's when Webster kicks in. So because Webster doesn't apply, they need to identify something in the text of the statute that allows for any court, the court of appeals, the district court, to exercise jurisdiction to enjoin these proceedings. The statute does not have that language. Let me ask you, Counsel Opposite has pointed out where he thinks the statute has a carve-out for structural claims. How has this been handled by other circuits? As far as I know, all of the courts of appeals have held that 1818I, which is the statute that gets construed, is an explicit bar on injunctive suits. The ones that I've seen tend to be suits saying that the agency has acted ultra vires, exceeded its statutory jurisdiction. I can't recall outside of Bank of Louisiana whether there have been cases involving constitutional claims, but what this court held in Bank of Louisiana is it applies across the board. That obviously also encompasses constitutional claims. This court reiterated that in its own decision in Cochran. I think what my friend said is he tried to base a textual distinction in the first sentence of K-1. That says that the board can bring a suit in district court when it already has a final order. It says we have a final order. It's been determined that you violated whatever statute or regulation applies, and we're seeking to enforce it. But that doesn't allow the agency in the first instance to get that order. That happens through the administrative process that Congress gave the agency. And what Congress said is we want that process to continue. We don't want it to be enjoined. That's specifically what the rest of K-1 is saying. It's the same thing that 1818-I is saying. And as I think Ms. Hicks for the OCC mentioned earlier, that makes sense against the backdrop of what Congress was trying to do here, right? Congress is worried about nationwide financial institutions failing all at the same time. It happened in the Great Depression. It happened during savings and loan. It happened in 2008. And when that happened, the National Credit Administration came in very quickly, and it had to take swift, decisive action in order to prevent the financial collapse across the board. It wasn't unique to any one bank or credit union, but was systemic. And what Congress said is if the NCOA is taking specific actions, it's immediately declaring the receivership. It's immediately issuing a self-executing temporary cease and desist order. We'll allow immediate judicial review under subsection F, under subsection E, you have 10 days to seek judicial review in district court. That's it. If the NCOA is taking other proceedings, those cannot be enjoined. And that is just, it's underlying the clear text here that Congress meant to deprive the courts of jurisdiction over injunctive suits while simultaneously preserving their jurisdiction to hear constitutional claims just at a later date. Because that means that Webster versus Doe doesn't apply, you don't get to any of the I think was urging that this court avoid. Those just don't come into play because there obviously is going to be judicial review of any adverse order. At one point that my friend addressed was that he suggested the agency is powerless to address the constitutional claims here. I don't think that that's correct. For example, to the extent that I've understood some of the arguments about the Seventh Amendment today to be about the legal nature of the remedy seeking monetary penalties as opposed to seeking equitable relief, to the extent that those are different at all, the agency can simply choose not to impose monetary relief or simply choose not to seek it in the administrative proceeding. And to the effect that has a substantive change on the Seventh Amendment analysis, it's a way that the agency could try to alleviate it if somebody is raising it in the enforcement proceeding. And similarly, to the extent that they're saying the removal restrictions on the administrative law judge violate the Constitution, it's been stipulated here at record on Appeal 100 that the NCOA board members are removable by the president at will. So to the extent that it's saying, well, we want to challenge these removal restrictions, one way that the agency could address that is to have the board adjudicated itself. Yes, the board is busy. They have many duties and opportunities. But if this is something about litigation risk, this is something that the agency can address in its enforcement proceedings. And that's sort of why the standard mechanism for this has been preserve all your claims in the enforcement proceeding. Maybe the agency does something about them. Maybe they don't. But you will always have judicial review if you're aggrieved by an order. That's the system that Congress set up. The plain text supports that conclusion, and the district court's analysis here got it exactly right. I'm happy to address any other questions, but otherwise, we'd ask you to affirm the dismissal. We have two minutes on rebuttal. Thank you. Webster v. Doe is the case that talks about constitutional avoidance as a canon of interpretation that the court has to apply. But the main point, the main case on point of explicit stripping is Shalala, not Webster v. Doe. Congress knew how to write express stripping statutes. Judge Wiener, in answer to your question, we gave several examples in our briefing. Congress knows how to say constitutional provisions. Federal district courts do not have any jurisdiction to decide. Congress knows how to write these stripping provisions. They are everywhere. This provision at issue here simply does not strip federal district court to decide structural claims. M Corp. did not involve a structural claim. M Corp. involved the claim of whether to run the Federal Reserve Board proceeding in parallel to the bankruptcy proceeding or whether to run them seriatim. That is not a structural claim. Bank of Louisiana is not precedent on how to apply the Thunder Basin factors. Axon of the U.S. Supreme Court is that precedent. It is not a precedent, Bank of Louisiana is not a precedent on how to apply Shalala. Shalala is the clear statement rule that this court needs to apply. If Bank of Louisiana is an explicit bar case, as Cochran says, then that only means that Bank of Louisiana, the three-factor analysis, applies in explicit stripping cases. This is an explicit stripping case, as the district court said. You should apply the three factors of Thunder Basin and conclude in favor of misremotes. This idea of irremediable harms, if we wait until after the agency proceeding has concluded, just think of the time, money, and effort that goes into going through a trial. That trial will occur in front of an illegitimate decision maker. It will occur as an illegitimate proceeding. That is the claim that must be resolved before the fact, as Shalala and Axon indicate. Thank you. Thank you. All right, the case has been submitted.